

North America   Europe   Asia

One Riverfront Plaza, Suite 730
Newark, NJ 07102
T +1 973 848 7676
F +1 973 848 7650

**JAMES S. RICHTER**
(973) 848-7645
jrichter@winston.com

February 23, 2015

**BY ECF AND FEDERAL EXPRESS**

Honorable Claire Cecchi, U.S.D.J.
United States District Court
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

        Re:     **Skyline Steel, LLC v. PilePro LLC, et al.**
                **Civil Action No:  13 CV 4930 (CCC)(JBC)**

Dear Judge Cecchi:

        As Your Honor is aware, this firm represents Plaintiff Skyline Steel, LLC ("Skyline") in the above-referenced matter.  We are writing to advise Your Honor of certain developments which we believe may impact the above-referenced case currently pending before Your Honor.

        By way of background, Skyline filed its complaint on August 15, 2013, to which PilePro responded by moving to compel arbitration.  On July 31, 2014, Your Honor administratively terminated the motion to compel, without decision, and instead requested briefing from the parties on the propriety of a transfer of the action to the Southern District of New York.  [Docket No. 48]  In response to this request, Skyline repeated its position that the merits of this case belong before Your Honor and that transfer of such merits would be inappropriate (because, among other reasons, there would not be personal jurisdiction over defendant Plymouth Tube Company in New York).  [Docket No. 49]  Such briefing is complete, however, Your Honor has not issued a decision on this issue.

        While the merits of this case belong before Your Honor, Skyline has consistently told this Court that, according to the applicable statutes and case law, PilePro brought its motion to compel in the wrong jurisdiction because a New York Court is the only Court that has jurisdiction to compel arbitration in New York.  *See, e.g.*, Docket No. 29 at 28-29, Docket No. 49 at 3-8.  Despite being alerted to the jurisdictional defect in its motion no later than November 27, 2013, PilePro never made any effort to move to compel arbitration in any New York court.

        Indeed, inconsistent with its position to this Court, PilePro attempted to assert its arbitration claims as counterclaims in a federal action in the Southern District of New York (which Skyline advised Your Honor in its November 12, 2014 letter.)  Now, despite this clear waiver of any right to arbitrate, PilePro has succeeded in inducing JAMS to issue a Commencement Letter dated February 18, 2015, formally beginning an arbitration proceeding between Skyline and PilePro.  The Commencement Letter

requires Skyline to submit a ranked list of arbitrator choices by February 25, 2015, and states that if Skyline does not do so, it will be deemed to have consented to any of the listed arbitrators.

Given that PilePro has not yet answered in the instant action, PilePro's counterclaims asserted in the arbitration (and in the Southern District of New York) are of course not pending before Your Honor. However, it is Skyline's view that such claims would be compulsory counterclaims in the case before Your Honor. Skyline has taken this position before the New York federal court, which stated at a hearing that it agrees with Skyline. A formal opinion is said to be forthcoming.

In accordance with that view, and given PilePro's recent commencement of arbitration and the short time frame imposed by JAMS, Skyline informed PilePro on Friday of its intent to file today a Petition to Stay Arbitration in New York state court seeking a stay of arbitration and a declaration that Skyline's claims in the action before Your Honor are not arbitrable. In response, yesterday evening, Sunday at 11:01 PM, PilePro responded that it had filed what purports to be an "Emergency Motion to Enforce Settlement Agreement and Compel Arbitration" in a Texas federal court action that was dismissed over three years ago. A true and correct copy of Skyline's pleading and PilePro's emergency motion are attached hereto as Exhibits A and B, respectively. Skyline also sought a Temporary Restraining Order today staying the arbitration pending a fuller hearing, which the court granted. A true and correct copy of that order is attached hereto as Exhibit C.

We therefore write to advise Your Honor that the issues of arbitrability of any disputes between Skyline and PilePro, including those in this action, are currently pending before a New York state court judge. As previously explained, the merits of the underlying claims asserted by Skyline are properly before this Court and will not be decided in the New York state court action. Of course, given that Your Honor previously administratively terminated PilePro's motion to compel arbitration, such issues are not pending in this Court.

Respectfully submitted,

s/ James S. Richter

James S. Richter

Enclosures
cc:     All Counsel of Record (by ECF and email)(w/attachments)

# Exhibit A

FILED: NEW YORK COUNTY CLERK 02/23/2015 09:32 AM
NYSCEF DOC. NO. 1

INDEX NO. 650531/2015

RECEIVED NYSCEF: 02/23/2015

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

SKYLINE STEEL, LLC,

               Petitioner,

     v.

PILEPRO LLC, PILEPRO SALES CORP.,
INC., and PILEPRO STEEL LP,

               Respondents.

---

Index No. _____

**PETITION TO STAY
ARBITRATION**

       Petitioner Skyline Steel, LLC ("Skyline") seeks an order pursuant to C.P.L.R. § 7503(b) staying the arbitration that Respondents PilePro, LLC, PilePro Sales Corp., Inc. and PilePro Steel LP (collectively "PilePro") have recently commenced.  Because Skyline contends that PilePro has waived any right to arbitration it may once have had, and that in any event the parties' agreement to arbitrate is invalid, the arbitration should not proceed until a court has decided these issues.  Skyline further requests a declaratory judgment pursuant to C.P.L.R. §§ 3001 and 7503(a), declaring that Skyline's claims currently pending in Federal Court in *Skyline Steel, LLC v. PilePro LLC et al.*, No. 13-CV-4930 (D.N.J. Aug. 15, 2013) are not subject to arbitration.

## PARTIES, JURISDICTION AND VENUE

       1.     Petitioner Skyline is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Parsippany, New Jersey.  Skyline is in the business of designing, engineering, selling and reselling steel sheet piling and sheet piling systems.

2.      Respondent PilePro LLC is a limited liability company organized under the laws of the state of Delaware, with its principal place of business in Austin, Texas. PilePro LLC is the holding company for the PilePro group of companies. PilePro LLC owns certain patents for steel connectors used to connect sheet pile wall components ("Connectors"), and for a period of time relevant to this dispute designed Connectors.

3.      Respondent PilePro Sales Corp., Inc. is a corporation organized under the laws of the state of Nevada, with its principal place of business in Austin, Texas. For a period of time relevant to this dispute, PilePro Sales Corp., Inc. manufactured, distributed and sold Connectors, and was the licensee of certain patents owned by PilePro LLC.

4.      Respondent PilePro Steel L.P. is a limited partnership organized under the laws of the state of Texas, with its principal place of business in Austin, Texas. PilePro Steel L.P. designs, manufactures and sells Connectors, and is the successor-in-interest to PilePro Sales Corp, Inc.'s patent license rights mentioned above.

5.      The three PilePro Respondents are privately held and hold themselves out to the public as a unified group of companies selling Connectors under the leadership of a single individual, Roberto Wendt.

6.      This Court has subject matter jurisdiction over this action pursuant to C.P.L.R. § 7503(a), which provides that where there is a "substantial question of whether a valid agreement [to arbitrate] was made or complied with....it shall be tried forthwith in said court." This Court is empowered to award declaratory relief in addition to a stay of arbitration pursuant to C.P.L.R. § 3001.

7.      This Court has personal jurisdiction over PilePro because PilePro regularly does and solicits substantial business in New York, either directly or through intermediaries, including

by shipping products into New York; is continuously and systematically present in New York; and has minimum contacts with New York. PilePro has also recently availed itself of the courts of this State by attempting to assert as counterclaims in the United States Court for the Southern District of New York the very same claims that it is now also asserting in its arbitration pleadings. Thus, the exercise of jurisdiction over PilePro would not offend traditional notions of fair play and substantial justice.

8.  Venue is proper in this judicial district pursuant to C.P.L.R. § 501, because the parties' terminated agreement provides for arbitration in "New York, New York."

**INTRODUCTION**

9.  Skyline and PilePro, once good business partners, have had a turbulent and contentious relationship over the past few years. The instant action arises out of a long-dormant JAMS arbitration which, although never formally commenced by Skyline, PilePro has recently taken steps to get off the ground, despite the fact that in the interim it attempted to bring the *very same claims* as counterclaims in the Southern District of New York.

10.  At PilePro's request, JAMS issued a Commencement Letter for the arbitration on February 18, 2015. *See* Exhibit A to the Affirmation of Margaret Ciavarella ("Ciavarella Aff.") The letter instructs the parties to submit a ranked list of arbitrator candidates by February 25, 2015, just one week after receipt of the letter, and states that if a party fails to respond by that deadline, it will be deemed to have consented to any of the listed arbitrators. As set forth in the contemporaneously filed Order to Show Cause and supporting documents, Skyline is therefore forced to seek emergency relief from this Court to avoid the irreparable harm posed by the dilemma caused by PilePro and JAMS: participating in an arbitration pursuant to an inapplicable and void agreement and potentially waiving its right to object to that arbitration later on, or

-3-

refusing to participate and risking prejudice in the arbitration proceeding (for instance, being forced to accept an arbitration panel not of its choosing) if the Court determines, after trial, that arbitration is appropriate.

11.     Further underscoring Skyline's need to seek emergency relief from this Court, PilePro informed Skyline at 11:01 PM on Sunday, February 22, 2015 that it had filed an "emergency motion to enforce settlement agreement and compel arbitration" in a Texas federal court. As set forth below, such motion is jurisdictionally improper; among other problems with it, only a New York court may compel an arbitration in New York.

12.     PilePro, by contrast, faces no prejudice from a stay of arbitration. As described in more detail below, PilePro's long inaction in moving its arbitration claims forward demonstrates that it has no particular need for immediate adjudication. Its claims (for money damages only, not injunctive relief) pertain to conduct that took place years ago, in the context of a business relationship that no longer exists.

13.     PilePro has no right to arbitrate its claims against Skyline for two primary reasons. First, the arbitration provision contained in the Settlement Agreement between Skyline and PilePro was never binding against Skyline at all, because it was procured by PilePro's fraud and anticompetitive conduct, concealed from Skyline at the time it entered into the agreement. Second, PilePro has plainly waived any right it may once have had to arbitrate, for two independent reasons.

14.     First, PilePro has waived any right to arbitrate by attempting to assert its claims in a litigation. As mentioned above, PilePro attempted to assert the identical claims it had previously asserted in arbitration—literally copied and pasted from its arbitration counterclaims—as counterclaims in the New York Federal Action.

-4-

15.    Second, PilePro has also waived any right to arbitrate by its failure to make a motion to compel in the appropriate forum (New York) for well over a year since Skyline first alerted PilePro to its error in making such a motion in New Jersey.  Specifically, while PilePro did move to compel arbitration in the District of New Jersey in late 2013 (in response to Skyline's August 15, 2013 antitrust and patent complaint against it in that forum), the arbitration provision at issue provides for arbitration in "New York, New York," "pursuant to the New York statutes governing arbitration."  Under the governing law, therefore, only Courts in the state of New York had jurisdiction to compel arbitration.  *See* C.P.L.R. § 7501 ("confer[ring] jurisdiction on *the courts of the state* to enforce [arbitration agreements] and to enter judgment on an award") (emphasis added); *Glencore Ltd. v. Degussa Eng'red Carbons L.P.*, 848 F. Supp. 2d 410, 438 (S.D.N.Y. 2012) ("It is black-letter law in New York that such a [New York venue] provision in an arbitration clause, if agreed to by the parties, gives courts in New York jurisdiction to enforce the arbitration clause.")[1]  Skyline alerted PilePro that its motion to compel had been brought in the incorrect forum no later than a pleading served on November 27, 2013, yet for over a year, including to the present, PilePro has made no attempt to move to compel arbitration in any New York court.  Indeed, the New Jersey Court dismissed PilePro's motion to compel arbitration without decision on July 31, 2014 and PilePro has taken no steps to reinstitute that motion.

16.    Similarly, PilePro has not attempted until very recently to start the JAMS arbitration; indeed, PilePro did not even pay the required filing fee until approximately a month

---

[1] Skyline asserts that Article 75 of the C.P.L.R. applies to this petition and any issues of arbitrability between Skyline and PilePro because the Settlement Agreement provides for the use of "the New York statutes governing arbitration."  However, even if the Federal Arbitration Act applied, the result would be the same:  namely, only a court in New York can compel an arbitration venued in New York.  *See Launch Fitness LLC v. GoPerformance Franchising, LLC*, No. 13-cv-216, 2013 WL 1288253, at *4 (D.N.J. Mar. 26, 2013) (court lacked authority to compel out of state arbitration).

ago, despite the fact that the initial demand for arbitration was filed almost two years ago, in May 2013. For all of these reasons, it is plain that PilePro is not entitled to arbitrate any claims with Skyline.

17.     The issue of arbitrability—both of PilePro's claims against Skyline in the JAMS arbitration that JAMS has just commenced, and of Skyline's antitrust (and other) claims against PilePro and PilePro's co-conspirator Plymouth Tube Company in the District of New Jersey—is not the subject of any unresolved motion in any pending action, though PilePro late last evening informed Skyline that it was attempting to obtain a jurisdictionally improper order to compel arbitration from a Texas federal court where no action between the parties is pending. The New Jersey court administratively terminated PilePro's motion to compel arbitration, without decision, and instead ordered the parties to submit briefs on whether Skyline's case should be transferred to the Southern District of New York. The transfer issue remains pending, but whether the merits of Skyline's claims are more appropriately tried in New York or New Jersey has no bearing on whether the claims are arbitrable. In the Southern District of New York action, in which PilePro attempted to assert its arbitration claims as counterclaims, the court indicated at oral argument that it would not permit PilePro to proceed with those counterclaims in that action, and that a written decision to that effect would be forthcoming. Thus, neither federal court is considering the arbitrability issues Skyline raises in this Petition.

18.     This Court is the proper venue to evaluate the effect of an arbitration clause providing for arbitration "in New York, New York." And Article 75 of the C.P.L.R. is the governing law, where that clause provides for arbitration "pursuant to the *New York statutes governing arbitration.*"

## FACTUAL BACKGROUND

19.    Prior to 2010, Skyline and PilePro had a customer-supplier relationship. Skyline engineered and sold steel sheet piling systems for use in construction projects, while PilePro manufactured and sold "Connectors," which are long pieces of steel designed to connect two sheet piles together. Skyline purchased Connectors from PilePro for resale to its customers as accessories to the sheet piling Skyline supplied.

20.    In 2010, Skyline decided to manufacture and sell its own Connectors. To do this, it entered into a business arrangement with Plymouth Tube Company ("Plymouth"), a company that manufactures Connectors and other steel products through a process called extrusion. Plymouth, to Skyline's knowledge, is the only extruder in the United States capable of manufacturing Connectors; it is the same company PilePro used to extrude its own Connectors.

21.    Before ordering any Connectors from Plymouth, Skyline engaged in a "freedom to operate" analysis, to evaluate whether its new connectors would infringe any of PilePro's intellectual property.

22.    Skyline thereafter entered the Connector market, selling its own improved and innovative Connectors in competition with PilePro. PilePro, evidently frustrated by Skyline's intrusion into its market share, retaliated against Skyline by filing a baseless patent infringement lawsuit against Skyline and its then parent company, ArcelorMittal S.A., in the United States District Court for the Eastern District of Texas, Case No. 6:10-cv-587 (Nov. 4, 2010). At around the same time, Skyline began to experience difficulties dealing with Plymouth. Without explanation, Plymouth refused to extrude any more Connectors or other products for Skyline.

**The Settlement Agreement**

23.     Skyline ultimately chose to resolve the sham patent litigation by entering into a Settlement Agreement with PilePro dated October 31, 2011. *See* Ciavarella Aff. Ex. B.

24.     The Settlement Agreement set forth the terms on which the parties would do business in future. Skyline was to purchase certain types of Connectors exclusively from PilePro, at prices and on terms set forth in the agreement.  PilePro, for its part, was to use its best efforts to encourage Plymouth to resume doing business with Skyline.

25.     The Settlement Agreement also contained an arbitration provision, which reads in part as follows: "***During the term of this agreement,*** all disputes relating to this agreement … shall be referred to final and binding arbitration, before a panel consisting of three arbitrators, under the JAMS commercial arbitration rules *in New York, New York and pursuant to the New York statutes governing arbitration*." (emphasis added)

26.     The parties, recognizing that antitrust or patent claims would not fall within the ambit of the arbitration provision, separately included reciprocal covenants not to sue for antitrust or patent claims.  Paragraph E of the Settlement Agreement was PilePro's covenant not to sue Skyline.  It provides, in relevant part, that "PilePro hereby covenants not to sue Skyline…for any and all claims that existed, arose, or occurred on or prior to October 1, 2018, relating to the infringement of any patents or other intellectual property covering Sheet Piling Connectors and for all other claims relating to, or arising out of, alleged antitrust violations…." Similarly, Paragraph F of the Settlement Agreement was Skyline's covenant not to sue PilePro. Had the parties contemplated that patent and antitrust claims would be subject to arbitration, they would not have needed to include the covenant not to sue provisions in the Settlement Agreement.

27.     Because PilePro did not comply with its contractual obligations under the Settlement Agreement, Skyline took preparatory steps to commence an arbitration, serving a Demand for Arbitration on PilePro on May 10, 2013.   Skyline's claims therein related to PilePro's breaches of the Settlement Agreement.   PilePro answered and asserted five counterclaims against Skyline. *See* Ciavarella Aff. Ex. C.

28.     Skyline, however, never commenced its contemplated arbitration.   Specifically, JAMS has confirmed that the commencement of an arbitration under the JAMS rules is signaled by the receipt of a "commencement letter" by the parties from JAMS. This is consistent with the JAMS rules themselves. *See* JAMS Comprehensive Arbitration Rule 5(a) ("The Arbitration is deemed commenced when JAMS issues a Commencement Letter...."). But before the arbitration was formally commenced—before full payment of the administrative fee, or selection of any arbitrators, and long before JAMS's February 18, 2015 Commencement Letter (which was solicited by PilePro)—Skyline learned that the arbitration provision in the Settlement Agreement had been procured by fraud and anticompetitive acts.

29.     Specifically, Skyline received an email from Plymouth's counsel, commenting on an email from Skyline once again requesting to do business with Plymouth: "they [Skyline] clearly do not know about our agreement with Pile Pro [*sic*] and it is my guess per their settlement agreement never thought Pile Pro would cut them off from manufacturers like us."

30.     Plymouth's counsel was of course quite correct:  Skyline had had no idea that Plymouth and PilePro had an exclusive dealing arrangement (the "Plymouth-PilePro Secret Agreement"), and certainly would never have entered the dispute resolution provisions of the Settlement Agreement (including the covenants not to sue on antitrust claims and the arbitration clause) had it known that PilePro would cut it off from Plymouth.  Skyline therefore took the

position that such dispute resolution provisions, including the arbitration provision, and the Settlement Agreement were void and unenforceable *ab initio,* terminated the Settlement Agreement by its own terms (out of an excess of caution), and abandoned its efforts to commence the arbitration.

**Termination of the Settlement Agreement and Commencement of the New Jersey Action**

31.     On August 15, 2013, Skyline sent a termination letter to PilePro, informing PilePro that it was invoking Paragraph B of the Settlement Agreement to terminate the agreement "effective immediately." The letter and its attached exhibit recite how Skyline complied with all the procedural steps necessary to invoke the termination remedy, and, indeed, PilePro has never asserted any non-compliance with those termination procedures. *See* Ciavarella Aff. Ex. D.

32.     Following the termination, Skyline filed suit against PilePro and Plymouth in the District of New Jersey, asserting antitrust, unfair competition, and patent claims in an action captioned *Skyline Steel, LLC v. PilePro LLC et al.,* No. 13-CV-4930 (D.N.J. Aug. 15, 2013) (the "New Jersey Action"). None of those claims seek to enforce the Settlement Agreement. *See* Ciavarella Aff. Ex. E.

33.     PilePro and Plymouth[2] responded to Skyline's complaint by moving to compel arbitration under the Federal Arbitration Act in the District of New Jersey. Skyline opposed the

---

[2] Plymouth is not a party to the Settlement Agreement, but has taken the position that it is entitled to compel arbitration as a third party beneficiary. This position is meritless. Plymouth had no involvement with either the patent action that gave rise to the Settlement Agreement or with the Settlement Agreement itself. The arbitration provision in the Settlement Agreement makes no mention of Plymouth, and Skyline has never agreed to arbitrate any claims with Plymouth at any time. Plymouth has no basis to invoke any of the very limited exceptions to the general rule that an agreement to arbitrate can be enforced only by a signatory to the agreement, such as when there is a corporate relationship between the non-signatory and a signatory. *See, e.g., Sokol Holdings, Inc. v. BMB Munai, Inc.,* 542 F.3d 354, 359 (2d Cir. 2008).

motion on a number of substantive and jurisdictional grounds, including the fact that, to the extent there was any arbitrability issue at all, the New York arbitration statutes applied by the express terms of the Settlement Agreement[3] provide that only a New York court has the authority to enforce the Settlement Agreement's arbitration clause.  Subsequent briefing on this motion occurred.

34.    Even after being alerted to the jurisdictional defect in their motion, PilePro and Plymouth to this day have failed to move to compel arbitration before any court in the proper venue, New York.

35.    The New Jersey court administratively terminated the motion to compel arbitration on July 31, 2014, without prejudice, without ruling on it.  The New Jersey court also requested briefing by the parties on the propriety of a transfer of the action to a district court in New York.

36.    Skyline's brief on the transfer issue explained that while the *merits* of the action belong in New Jersey, only a New York court has jurisdiction to grant any motion to compel arbitration.    Skyline pointed out that PilePro and Plymouth have failed to move to compel arbitration in New York, and thus have now waived their right to do so.  Once again, both PilePro and Plymouth did nothing.  The New Jersey court has yet to rule on the question of whether the action should be transferred to New York.

37.    In addition to the New Jersey Action, on November 15, 2013 Skyline commenced a separate action against PilePro before the Southern District of New York captioned *Skyline Steel, LLC v. PilePro, LLC*, No. 13-cv-08171-JMF (S.D.N.Y. Nov. 15, 2013) (the "SDNY

---

[3] *See* Settlement Agreement Paragraph H, providing that any arbitration relating to the Settlement Agreement would take place in New York "pursuant to the New York statutes governing arbitration."

Action"). The SDNY Action concerns false allegations PilePro made to certain Skyline customers that a sheet piling system distributed by Skyline in the United States infringes a new PilePro patent that is unrelated to the Connector patents and antitrust issues in the New Jersey Action and the Settlement Agreement. On October 31, 2014, PilePro submitted its First Amended Answer, with counterclaims, to Skyline's Second Amended Complaint in the SDNY Action, purportedly as of right. To hedge its bets, PilePro also filed a motion for leave to file the amended answer with counterclaims. Those counterclaims are *identical to* (literally cut and pasted from) the counterclaims PilePro previously asserted in the arbitration.

38.     Now, not long after attempting to assert its arbitration counterclaims in the SDNY Action, PilePro has taken steps to commence the arbitration, filing a notice of appearance before JAMS, soliciting an invoice from JAMS for payment of the administrative fee, and on February 4, 2015, paying that invoice. On February 18, 2015, JAMS issued a Commencement Letter for the arbitration in response to PilePro's actions, despite Skyline's objections.

39.     Because Skyline has raised substantial issues of arbitrability, and because PilePro's commencement of the arbitration at this stage is completely inconsistent with its past behavior, including its waiver of any right to arbitrate by its attempted assertion of the same claims as counterclaims in the SDNY Action and by its long inaction in moving the arbitration forward, Skyline asks this Court to issue an order staying the arbitration.

## BASIS FOR THE PETITION

### The JAMS Arbitration Should Be Stayed Pursuant to C.P.L.R. § 7503(b)

40.     Skyline is entitled to a stay of arbitration under applicable law. The arbitration clause in the Settlement Agreement (to the extent it is enforceable at all, which Skyline disputes) specifically provides for arbitration "*in New York, New York and pursuant to the New York*

*statutes governing arbitration*." New York courts have interpreted similar language to require application of Article 75 of the C.P.L.R. (New York's arbitration statute) rather than the Federal Arbitration Act. *ROM Reins. Mgmt. Co. v. Cont'l Ins. Co.*, 982 N.Y.S. 2d 73, 74 (1st Dep't 2014) (finding that C.P.L.R. Article 75 should be applied where "[t]he arbitration clause of the agreement before us provides that 'the arbitration laws of New York State' shall govern the parties' arbitration"); *Harper Ins. Ltd. v. Century Indem. Co.*, 819 F. Supp. 2d 270, 274 (S.D.N.Y. 2011) (finding that the C.P.L.R. applies where the parties "agreed that the 'arbitration law of New York State shall govern such arbitration'").

41.     C.P.L.R. § 7503(b) provides that a party "may apply to stay arbitration on the ground that a valid agreement was not made...." Such a stay is appropriate here where Skyline disputes that a valid agreement to arbitrate was ever made or, if made, that it remains in effect or governs the current disputes.

42.     The Settlement Agreement's arbitration provision is ineffective and does not cover PilePro's claims against Skyline for two primary reasons.

43.     First, the dispute resolution provisions, including the arbitration clause, of the Settlement Agreement, are invalid because they were procured by PilePro's and Plymouth's exclusionary and anticompetitive conduct. Skyline, as Plymouth's counsel so succinctly described, would never have agreed to the covenant not to sue on antitrust claims or the Settlement Agreement's arbitration provision had it known that PilePro and Plymouth had entered into the anticompetitive Plymouth-PilePro Secret Agreement and were working together to cut Skyline off from extrusion services, such that Skyline would never be able to manufacture or sell its own Connectors. And it certainly would never have entered an arbitration agreement providing for almost no discovery, while simultaneously agreeing not to sue on antitrust claims

until 2018—when the statute of limitations on the illegal agreement might already have run. Arbitration clauses procured by fraud such as this are not binding. *Tong v. S.A.C. Capital Mgmt., LLC*, 16 Misc. 3d 401, 410, 835 N.Y.S.2d 881, 888 (Sup. Ct. N.Y. Cnty. 2007) *aff'd as modified*, 52 A.D.3d 386, 860 N.Y.S.2d 84 (1st Dep't 2008) ("Under CPLR § 7503, a party may resist enforcement of an agreement to arbitrate on any basis . . . [of] fraud . . . ."); *Kennelly v. Mobius Realty Holdings LLC*, 33 A.D.3d 380, 383, 822 N.Y.S.2d 264, 267 (1st Dep't 2006) (noting that when an "agreement [is] permeated with fraud," the "arbitration clause . . . [is not valid and] fall[s] with the rest of the agreement").

44. The arbitration clause is also invalid because its procurement was part and parcel of PilePro and Plymouth's exclusionary and anticompetitive conduct. Where, as here, there is an allegation that a contract's provision is an element or the result of anticompetitive conduct, the court must determine whether this invalidates the arbitration provision. *See Hunt v. Mobil Oil Corp.*, 444 F. Supp. 68, 71 (S.D.N.Y. 1977) (allowing antitrust claims to go to trial because the "plaintiffs claim[ed] that they were coerced into signing the agreement with the arbitration clause; that is, where the agreement itself is part and parcel of the alleged antitrust violation."); *Stendig Int'l, Inc. v. B. & B. Italia, S.p.A.*, 633 F. Supp. 27, 28 (S.D.N.Y. 1986) (court determined question of whether "a litigable antitrust claim" had been pled by the party resisting arbitration who had claimed that a clause within the agreement violated the antitrust laws); *Weintraub v. Vigilante Protective Servs., Inc.*, 317 N.Y.S. 2d 953, 954-55 (1st Dep't 1971) ("the issue of the restraint of trade . . . should be tried first by the court and arbitration stayed, pending such determination"). The Court – not an arbitrator – must resolve this issue.

45. Second, even if the Settlement Agreement were valid, PilePro has waived any right to arbitration it may once have had. Participation in litigation, especially when combined

-14-

with delay in seeking arbitration and with prejudice to the other party, is often found to constitute a waiver of the right to compel arbitration. *See De Sapio v. Kohlmeyer*, 35 N.Y.2d 402, 406 (1974) (finding that the defendant's participation in the court proceedings waived "any right to stay the action," as "[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration"); *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 626 F. 3d 156, 159-60 (2d Cir. 2010); *Kramer v. Hammond*, 943 F. 2d 176, 179 (2d Cir. 1991). PilePro's conduct over the past years has made crystal clear that it is not serious about enforcing any right to arbitrate.

46.     Most notably, it has taken its original arbitration counterclaims and copy-pasted them directly into the SDNY Action. But even before doing that, PilePro had *already* waived its right to arbitrate by failing to move to compel arbitration or to attempt to prosecute the arbitration many months after being alerted to the jurisdictional defect in its now-defunct motion to compel arbitration in the District of New Jersey. Indeed, PilePro did not even pay the required administrative fee to JAMS until early February 2015—*a year and a half* after initially attempting to assert counterclaims in arbitration.

47.     For all of these reasons, Skyline is entitled to a stay of the JAMS arbitration.

**Skyline Is Also Entitled to a Declaratory Judgment of Non-Arbitrability**

48.     The arbitration dispute between Skyline and PilePro has two parts. In addition to seeking to arbitrate its own claims in the JAMS arbitration that PilePro has recently succeeded in inducing JAMS to commence, PilePro has also asserted that Skyline's claims against PilePro and Plymouth in the New Jersey Action are arbitrable. PilePro's assertions are baseless and this

Court should hold that Skyline's claims, pending in the New Jersey Action, are also not arbitrable.

49.     Skyline's New Jersey claims against PilePro and Plymouth allege conspiracy, monopolization, and sham litigation claims under the Sherman Act, violations of New Jersey antitrust and unfair competition law, and patent misuse and declaratory judgment claims of patent non-infringement and invalidity. As set forth in detail in Skyline's complaint, PilePro and Plymouth have conspired, via the Plymouth-PilePro Secret Agreement, to exclude Skyline from the domestic market for connectors. *See generally* Ciavarella Aff. Ex. E.

50.     There is a live case or controversy as to the arbitrability of Skyline's claims against PilePro in the New Jersey Action because, while it is no longer pending, PilePro filed a motion to compel arbitration as to these claims, resulting in stalling the New Jersey Action to such an extent that the Court has refused to move forward on any discovery (or even a case management conference) until those arbitrability issues are resolved.  If these questions are not resolved alongside the issue of the arbitrability of PilePro's claims, the result will be inequitable to Skyline and will result in a procedural morass.  For example, if Skyline is forced to arbitrate PilePro's claims, it is unclear what will become of Skyline's claims against PilePro, pending (but stalled) in the New Jersey Action, unless this Court decides whether or not they are arbitrable.

51.     Skyline's claims are not arbitrable for both of the reasons listed above—the fact that the arbitration provision was procured by fraud and anticompetitive acts, and PilePro's waiver of any right to arbitrate.  But Skyline's claims also must be litigated rather than arbitrated for three additional reasons.

52.     First, upon learning of the anticompetitive PilePro-Plymouth secret exclusive dealing agreement, and before Skyline commenced the New Jersey Action against PilePro and

Plymouth, <u>Skyline sent a formal notice letter to PilePro, following the procedures set forth in the agreement, and terminating the Settlement Agreement</u>. *See* Ciavarella Aff. Ex. D. PilePro has never disputed that Skyline did indeed send a notice of termination, before asserting any of the claims set forth in the New Jersey Action, or that Skyline properly followed the termination procedures contained in the agreement. The arbitration provision expressly states that it applies *during the term of the agreement* only; this language would mean nothing if PilePro is permitted to force Skyline to arbitrate years after Skyline's termination of the agreement.

53.     PilePro evidently takes the view that Skyline's termination of the Settlement Agreement was ineffective, but PilePro's refusal to recognize Skyline's termination does not keep the agreement alive. New York law is clear that when a party complains that termination of a contract was unjustified, the remedy is breach of contract damages, not specific performance. *See, e.g., Nature's Plus Nordic A/S v. Natural Organics, Inc.*, No. 09-CV-02456 (ADS) (AKT), 2013 WL 5942257, at *11 (E.D.N.Y. Nov. 6, 2013) (claim that termination was improper, whether because not based on material breach or for failure to follow notice of breach requirements, is subject to breach of contract damages rather than continuation of the agreement); *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 726-28 (2d Cir. 1992) (wrongful termination of distribution agreement creates breach of contract damages); *Mike Bldg. & Contracting, Inc. v. Just Homes, LLC*, 901 N.Y.S. 2d 458, 468-70 (Sup. Ct. 2010) (same). This is particularly true where, as here, the Settlement Agreement contains no specific performance provision.[4]

---

[4] A simple analogous example illustrates the absurdity of PilePro's position. Imagine a homeowner with a fuel delivery contract with a heating oil company. A dispute on pricing follows and the homeowner terminates the contract based on an alleged "material breach" of the contract pricing term. If the heating oil company disputes that it is in breach, its remedy is to sue

54.     Second, <u>Skyline's claims are not related to the Settlement Agreement</u>. Even if the Settlement Agreement were valid, still in force, and PilePro had not waived its right to arbitrate, the arbitration provision only covers disputes that "relat[e] to" the Settlement Agreement.  By including this language, alongside the covenants not to sue for antitrust and patent claims, the parties did not agree to submit the antitrust and patent claims in Skyline's New Jersey complaint to arbitration.

**Skyline's Antitrust Claims Arising from the Plymouth-PilePro Secret Agreement**

55.     Skyline's antitrust claims challenge a variety of anticompetitive conduct by PilePro and Plymouth.  PilePro and Plymouth worked both together and independently to exclude Skyline from the Connector market and prevent it from competing with PilePro.  For instance:

- PilePro filed a baseless patent infringement litigation against Skyline prior to the execution of the Settlement Agreement, in an attempt to stop Skyline from selling its own Connectors.  Ex. E ¶¶ 75-77.

- PilePro refused to sell certain connectors to Skyline, to eliminate Skyline's ability to compete for jobs requiring such Connectors.  *Id.* ¶¶ 102-09.

- Plymouth abused its dominant market position as the only Connector extruder in the United States by conspiring with PilePro to refuse to provide extrusion services to Skyline, even for products other than Connectors.  *Id.* ¶¶ 84-85, 99.

56.     None of this conduct seeks to enforce any terms of the Settlement Agreement.  Rather, Skyline challenges on antitrust grounds a completely different agreement between PilePro and a third party—the Plymouth-PilePro Secret Agreement.   As explained above, had

---

the homeowner for breach of contract.  It cannot refuse to recognize the termination and continue to make deliveries that the homeowner no longer wants.

Skyline known of the Plymouth-PilePro Secret Agreement at the root of this conduct, it would never have entered into an agreement to arbitrate at all. Indeed, PilePro took affirmative steps in the Settlement Agreement to *conceal* the Plymouth-PilePro Secret Agreement, by including a promise to encourage Plymouth to deal with Skyline (Settlement Agreement ¶ A.9), when in fact Plymouth and PilePro had an agreement to do exactly the opposite. And finally, as discussed above, the inclusion of a covenant not to sue for antitrust violations shows the parties' clear intent that antitrust claims *not* be encompassed in any arbitration "relating to" the Settlement Agreement.

**Skyline's Patent Claims**

57.     Skyline's New Jersey Action also seeks a declaratory judgment that certain of PilePro's patents are not infringed by Skyline and are invalid. Ex. E ¶¶ 198-232. Like the antitrust claims, these patent claims do not "relat[e] to" the Settlement Agreement for several reasons.

58.     First, the resolution of these patent claims will have no impact on the parties' obligations under the Settlement Agreement, which expressly states that PilePro is not providing any license to any patents. The Settlement Agreement simply required that if Skyline buys and resells Connectors (other than certain Connectors listed in the Settlement Agreement), which Skyline is not obligated to do, it must buy and resell the Connectors from PilePro; this does not require Skyline to receive any patent rights at all.[5] As such, the parties' rights and obligations under the Settlement Agreement do not depend on whether Skyline actually infringes any

---

[5] Skyline would not need a license to PilePro's patents in order to resell PilePro's Connectors (even if one were to assume that PilePro's patents did indeed cover the Connectors) because PilePro's sale of the connectors to Skyline would extinguish its right to pursue infringement claims against Skyline or any subsequent purchaser of the product. *See Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008) (the initial authorized sale of a patented item terminates all patent rights in that item).

PilePro patent, or whether any PilePro patent is valid.  A ruling that any or all of the patents at issue are invalid or infringed would not eliminate the consideration for the Settlement Agreement or provide a basis to terminate it.  In short, because the noninfringement or invalidity of PilePro's patents have nothing to do with either party's rights or obligations under the Settlement Agreement, Skyline's patent claims do not "relate to" the agreement and are not arbitrable.

59.     Second, proving up Skyline's patent claims is an entirely different exercise than arbitrating a dispute which "relates to" the Settlement Agreement.  Patent infringement is determined by comparing the claims of a patent to the accused products, and patent invalidity may be determined by comparing the claims of the patent to technology that pre-dates the patent.  Neither of these analyses relates to the Settlement Agreement or requires any interpretation of the Settlement Agreement.

60.     Third, just as with antitrust, the inclusion in the Settlement Agreement of a covenant not to sue on patent claims demonstrates that the parties did not envision patent claims being part of any arbitration "relating to" the Settlement Agreement.  Any holding that patent claims are arbitrable under the Settlement Agreement would render the covenant not to sue on patent claims meaningless.

61.     Finally, PilePro's own conduct confirms that the arbitration clause was not intended to encompass either patent or antitrust claims.  PilePro threatened to re-file its baseless patent litigation, as well as potentially other claims relating to unspecified antitrust claims against Skyline, if Skyline terminated the Settlement Agreement. Ex. E. ¶¶ 93, 133.  PilePro's admission that it could bring court action—not arbitration—on its patent claims is evidence that can be used to interpret the Settlement Agreement.  *See Nationwide Mut. Ins. Co. v. Erie &*

*Niagara Ins. Ass'n*, 672 N.Y.S. 2d 596, 597-98 (4th Dep't 1998) (court may consider a party's admissions to interpret a contract).

**The Settlement Agreement's Own Terms Make Clear that Antitrust and Patent Claims Are Not Arbitrable**

62.     As set forth above, the Settlement Agreement's covenants not to sue on antitrust or patent claims are powerful evidence that the parties did not intend to arbitrate such claims. The same is true of the parties' selection of the JAMS "expedited procedures" for disputes "related to" the Settlement Agreement. These procedures are utterly unsuitable for complex antitrust and patent cases, further demonstrating that the parties never intended to arbitrate such disputes.

63.     The JAMS expedited arbitration procedures (Exhibit F to the Ciavarella Affirmation) provide for limited discovery within a narrow timeframe. Specifically, the parties would be presumptively limited to one deposition per side, limited document requests, a narrow scope of e-discovery, no expert depositions, and no dispositive motions. The procedures presumptively provide only 75 days for fact discovery and a merits hearing 60 days thereafter. Further, the C.P.L.R. restricts parties' ability to obtain documents or testimony from third parties in arbitration—including Plymouth and the many other third parties likely to possess relevant information. *See* C.P.L.R. §§ 2302(a), 7505; *De Sapio v. Kohlmeyer*, 321 N.E.2d 770, 773 (N.Y. 1974) (arbitrating parties may only obtain disclosure "to aid in arbitration" in "extraordinary circumstances" by petitioning the court); Ex. E ¶¶ 102-04, 110-13. Such a limited and accelerated proceeding could not possibly provide Skyline with a full and fair opportunity to resolve the complex antitrust and patent issues set forth in its New Jersey complaint. The fact that the parties agreed to these expedited procedures is therefore further evidence that they never intended to arbitrate such claims.

64.    For all of the above reasons, it is clear that Skyline's New Jersey claims are not subject to arbitration, and Skyline is entitled to a declaration to that effect.

## PRAYER FOR RELIEF

WHEREFORE, Skyline respectfully requests that this Court issue an order staying the arbitration, on the grounds that no valid and enforceable agreement to arbitrate is currently in effect and/or was never in effect because it was void *ab initio* and unenforceable, and Skyline has not otherwise expressly and unequivocally agreed to arbitration; declaring that Skyline's claims against PilePro and Plymouth as set forth in the New Jersey action are not arbitrable; enjoining PilePro and its counsel or agents from taking any action inconsistent with this Court's exercise of jurisdiction over these arbitrability issues; and granting such other and further relief as this Court in its discretion deems appropriate.

Dated:  New York, New York
February 23, 2015

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/  Aldo A. Badini*  _____
Aldo A. Badini
abadini@winston.com
Margaret Ciavarella
mciavarella@winston.com

200 Park Avenue
New York, NY 10166
(212) 294-6700

*Attorneys for Petitioner Skyline Steel, LLC*

-22-

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

PILEPRO LLC and PILEPRO SALES
CORPORATION,

    Plaintiffs

vs.

SKYLINE STEEL LLC and
ARCELORMITTAL S.A.,

    Defendants

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

CAUSE NO. 6:10-cv-587

## PLAINTIFFS' EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COMPEL ARBITRATION

### TO THE HONORABLE COURT:

Plaintiffs, PILEPRO LLC and PILEPRO SALES CORPORATION (herein

"Plaintiffs") file this Motion for to Enforce Settlement Agreement and Compel Arbitration.

### I. BACKGROUND AND ARGUMENT

1.    Plaintiffs and Defendants (Skyline Steel LLC and ArcelorMittal S.A., "Defendants")

signed a Settlement Agreement on or about October 31, 2011, redacted for confidentiality and

attached hereto as Exhibit A. In violation of the Settlement Agreement, Defendant Skyline

Steel LLC stated in a recent email to Plaintiffs that "[Defendant] Skyline therefore intends to

seek a Temporary Restraining Order staying the arbitration." Further, that Defendant Skyline

"will appear at the New York Supreme Court at 60 Centre St., New York, NY at approximately 11am on Monday, February 23 to request the order;. . . ." *See* February 20, 2015 e-mail from Skyline to PilePro, attached hereto as Exhibit B.

2.     As consideration for agreeing to the Settlement Agreement, Plaintiffs signed and filed a Joint Motion and Stipulation of Dismissal, without prejudice, on or about November 4, 2011. *See* Exhibit A at paragraph D; *see also* Exhibit C.

3.     In the Settlement Agreement, Defendants agreed to a binding arbitration clause that requires the Parties to adhere to a mandatory three-step process for "all disputes" described in the agreement.   First, the dispute shall be referred to the Chief Executive Officers of the Parties.   Second, an unresolved dispute shall be referred to mediation.   Third, an unresolved dispute shall be referred to "final and binding arbitration."   Exhibit A at paragraph H.

4.     Defendants also agreed not to sue Plaintiffs or any of their affiliates for any and all claims that "existed, arose, or occurred on or prior to October 1, 2018, relating to the infringement of any Skyline patents or other intellectual property covering Sheet Pile Connectors and for all other claims relating to, or arising out of, alleged antitrust violations, unfair trade practices, or other business torts arising in the United States of America, Canada and Mexico. . . ." Exhibit A at paragraph F.

5.     Defendant Skyline recognized that arbitration was the appropriate vehicle for disputes with Defendants-Skyline in fact initiated arbitration against PilePro on or about May 10, 2013. *See* Skyline Demand for Arbitration, attached as Exhibit D.  Instead of pursuing the arbitration it initiated, Skyline is now reversing course and seeks a stay of the arbitration proceeding.

6.     Upon information and belief, Defendant Skyline's latest missive is a transparent effort to ramp up litigation costs by filing lawsuits in far-flung areas of the country in violation of the Settlement Agreement.  It appears to Plaintiffs that this is part of an effort by Defendant

Skyline to flood Plaintiffs with litigation and gain an advantage in a court where Defendant Skyline knows that Plaintiffs do not have counsel. Defendant Skyline's attacks should be reigned in and it should be ordered to honor the agreement by which it achieved a dismissal of this case.

7.      Moreover, the law is clear in that it requires an arbitrator—not a court—to decide arbitrability of disputes under facts and circumstances like those present here. Here, however, we need not rely on such law because the arbitration agreement itself specifically states the arbitrators have the final say as to arbitrability:  "All questions as to the meaning of the provisions of this paragraph, or as to the ability to arbitrate any dispute under this paragraph shall be resolved by the arbitrators, shall be absolutely binding, and not subject to judicial review." Exhibit A at paragraph H.

8.      Given the clear wording of the arbitration agreement and Skyline's own conduct, there is no issue for the New York court to consider — certainly not one on an expedited basis. This dispute is properly before the arbitrator and should stay there.

## II. EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEEMENT

9.      Plaintiffs therefore respectfully request that this Court order Defendant Skyline to cease all attempts at litigation in New York state court, and any other court, in violation of the Settlement Agreement signed by all parties as consideration for dismissing, without prejudice, Cause No.6:10-cv-587.

## III. EMERGENCY MOTION TO COMPEL ARBITRATION

10.     Plaintiffs further respectfully request that this Court enter an order compelling Defendants and Plaintiffs to arbitrate this and any other related dispute as required by paragraph H of the Settlement Agreement.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray the Court grant this Emergency Motion to Enforce Settlement Agreement and Emergency Motion to Compel Arbitration .

Respectfully submitted,

**BIRDSONG & ARMSTRONG. P.C.**

/s/ Lindsey S. Birdsong
Lindsey S. Birdsong
Texas Bar No. 02333615
211 East Houston Street
Tyler, TX 75702
Tel.: (903) 595-6297
Fax: (903) 595-3630
Email: LindseyBirdsong@birdsonglaw.com

*Pro hac vice* **to be filed for:**

**THE BROWN FIRM, P.L.L.C.**

/s/ Andrew Brown
Andrew S. Brown
Texas Bar No. 24036268
P.O. Box 6061
Austin, Texas 78762
Tel.: (512) 524-1595
Fax: (512) 681-7033
Email: abrown@bbatx.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 22nd day of February, 2015, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) as well as via fax to the following counsel who represented Defendants at the time of the Settlement Agreement:

Richard A. Sayles
State Bar No. 17697500
SAYLES|WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Phone: (214) 939-8700
Fax: (214) 939-8787

Of Counsel:
Hugh A. Abrams
Claire M. Korenblit
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

/s/ Lindsey S. Birdsong
Lindsey S. Birdsong

5

# Exhibit C

At IAS Part 24 of the Supreme Court
of the State of New York, County of
New York, 60 Centre Street, New York, New York
on this 23 day of February, 2015.

P R E S E N T :  Hon. SHIRLEY WERNER KORNREICH
J.S.C.                                                      J.S.C.

MOTION SEQUENCE # 001

---

SKYLINE STEEL, LLC,

                 Petitioner,

        v.

PILEPRO LLC, PILEPRO SALES CORP., INC.,
and PILEPRO STEEL LP,

                 Respondents.

Index No. 650531/2015

**ORDER TO SHOW CAUSE TO STAY
ARBITRATION**

---

Upon the annexed petition of SKYLINE STEEL, LLC, by its attorneys, Winston &

Strawn LLP, duly verified on February 23, 2015, together with the exhibits annexed thereto, and

the Emergency Affirmation of Aldo A. Badini dated February 23, 2015,

Now, on motion of Winston & Strawn LLP, attorneys for Petitioner,

Let the Respondents, PILEPRO LLC, PILEPRO SALES CORP., INC., and PILEPRO

STEEL LP, show cause before the Supreme Court of the State of New York, in and for the

County of New York on the ___10___ day of ~~February~~ *March*, 2015 at _11_ a.m./~~p.m.~~, or as soon thereafter as counsel may be heard, why an Order should not be made and entered pursuant to section 7503(b) of the C.P.L.R. staying the arbitration proceeding commenced by Respondents against Petitioner before JAMS until the Court enters a final decision on the Petition. The Order is sought upon the ground that the parties' agreement to arbitrate is invalid and that in any event PilePro has waived any right to arbitration it may once have had.

ORDERED that, pending hearing ~~and determination on the Petition~~ *of this order to show cause*, all proceedings in said arbitration be stayed; and it is further

ORDERED that Roberto Wendt, and any counsel or agents acting on his behalf, is enjoined from taking any actions in any jurisdiction inconsistent with this Court's exercise of jurisdiction over the parties' disputes with respect to arbitrability, pending ~~further order of this Court~~ *the hearing of this order to show cause*; and it is further

ORDERED that sufficient cause *being alleged* ~~appearing~~ therefor, let ~~email or~~ certified mail service of a copy of this Order and all papers presented in support thereof upon Respondents' representative Roberto Wendt *and upon his counsel* on February 23, 2015, be deemed good and sufficient service.

ENTER:

_____, J.S.C.

SHIRLEY WERNER KORNREICH
J.S.C.

2